SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Horace Cowan v. State Parole Board (A-24-24) (089243)**

**Argued September 25, 2025 -- Decided March 10, 2026**

**JUSTICE PIERRE-LOUIS, writing for a unanimous Court.**

In this appeal, the Court considers whether, after denying Horace Cowan parole, the State Parole Board acted in an arbitrary, capricious, or unreasonable manner in setting a future eligibility term (FET) -- the period of time an inmate must remain incarcerated before being considered for parole again -- of 200 months when, under N.J.A.C. 10A:71-3.21(a)(1), Cowan's presumptive FET was 27 months.

Cowan has been in custody since February 1990. He was convicted of aggravated manslaughter and weapons offenses in 1992 and sentenced to life imprisonment with 25 years' parole ineligibility. He also pled guilty to offenses related to a prison escape and received a consecutive sentence of 10 years with 5 years' parole ineligibility. He committed 18 institutional disciplinary infractions during his first 21 years in prison and only 3 since 2011. He has maintained employment, obtained his high school diploma, and completed numerous programs since 2001.

Cowan became eligible to be released on parole in February 2020. A two-member Board panel denied Cowan parole. On May 6, 2020, the three-member panel imposed a 200-month FET -- more than seven times the presumptive FET of 27 months noted in N.J.A.C. 10A:71-3.21(a)(1). The panel issued a 10-page decision detailing Cowan's offenses, his institutional record, his "insufficient problem resolution," and the panel's reasons for imposing the 200-month FET.

On administrative appeal, the full Parole Board affirmed the denial of parole and imposition of the extended FET, again citing "insufficient problem resolution" and a "lack[] [of] insight into his criminal behavior." The Appellate Division affirmed. The Court granted certification. 259 N.J. 485 (2025).

**HELD:** The 200-month FET was arbitrary, capricious, and unreasonable. Adopting an analysis similar to the Appellate Division's analysis in Berta v. State Parole Board, 473 N.J. Super. 284 (App. Div. 2022), the Court holds that, to impose an extended FET beyond the presumptive term, the Parole Board must (1) overcome the

1

presumption by explaining why the presumptive term is clearly inappropriate and (2) explain why the extended FET that the Board imposed is necessary and appropriate. Any extended FET imposed should be no longer than needed to address the likelihood of recidivism, which is the primary concern of the applicable statute and regulations.

1.  Prior to 1979, an inmate's punishment was a highly relevant consideration in parole determinations, in addition to the likelihood of recidivism.  After amendments to the Criminal Code in 1979, parole eligibility became a judicial responsibility to be exercised at the time of sentencing, and the dual considerations of (1) the likelihood of recidivism and (2) the sufficiency of punishment were replaced with only one criterion:  whether the inmate would likely commit another crime if released.  Consequently, the 1979 Parole Act created a presumption in favor of release, shifting the burden to the State to prove that the prisoner should not be released.  The Act was amended again in 1997, but it is the 1979 Parole Act that controls here because an inmate's parole eligibility is governed by the version of the Parole Act in effect when their crime was committed.  (pp. 18-21)

2.  Under the 1979 Parole Act, every defendant sentenced to a term of imprisonment in New Jersey becomes eligible for parole after serving the minimum term specified by law.  Pursuant to the Parole Board's regulations, the 24 factors listed in N.J.A.C. 10A:71-3.11(b) must be considered in evaluating an inmate's parole application.  If the Board denies parole, the Board must set an FET, or the date on which the inmate can next be considered for parole.  N.J.A.C. 10A:71-3.21(a)(1) sets the standard FET at 27 months for inmates serving sentences for murder, manslaughter, aggravated sexual assault, kidnapping, and other serious offenses.  The standard FET for other offenses is shorter.  The Board, may, in its discretion, increase or reduce an FET by nine months pursuant to N.J.A.C. 10A:71-3.21(c).  The Parole Board can also depart from the FET schedule and establish an FET that exceeds the nine-month increase pursuant to N.J.A.C. 10A:71-3.21(d), which directs the panel to consider the same factors the Board is required to consult in making the initial decision of whether to grant or deny parole pursuant to N.J.A.C. 10A:71-3.11(b).  (pp. 21-24)

3.  The Court reviews instructive case law.  Most recently, in Berta, the Appellate Division reversed as 72-month FET.  473 N.J. Super. at 325.  The Berta court held that in imposing an FET higher than the presumptive term outlined in the N.J.A.C. 10A:71-3.21(a) schedule and above the extended term of nine months outlined in N.J.A.C. 10A:71-3.21(c), the Parole Board must:  (1) "overcome the presumption by explaining why a twenty-seven-month FET is clearly inappropriate" and (2) must also explain "why the FET that was actually imposed is necessary and appropriate." Id. at 323.  The appellate court stressed that "[t]he Board cannot simply pick a number out of thin air."  Ibid.  (pp. 25-29)

2

4.  Here, the Board panel's decision is devoid of any connection between the facts in the parole record and the determination that a 200-month FET, instead of a 27- or 36-month FET, was necessary to reduce Cowan's likelihood of future criminal behavior.  Also absent from the panel's decision is any mention of some of the important factors set forth in N.J.A.C. 10A:71-3.11.  An FET of 27 months -- the longest presumptive FET listed in the regulations -- already reflects the seriousness of Cowan's crimes.  To increase the FET above 27 or 36 months, the Board must adhere closely to its own regulations, which require a determination regarding the likelihood that an inmate will commit a crime if released.  Here, given the Board's lack of focus on Cowan's risk of re-offense, the absence of substantive reasoning in its decision for imposing an FET term of nearly 17 years when the presumptive term was between two and three years, and its apparent lack of meaningful consideration of the one objective assessment tool designed to determine an inmate's risk of recidivism, the Board's imposition of a 200-month FET was arbitrary, capricious, and unreasonable.  (pp. 29-35)

5.  Going forward, the Parole Board must adhere to the standard articulated by the Appellate Division in Berta when setting FETs beyond the presumptive term and the allowable nine-month increase pursuant to N.J.A.C. 10A:71-3.21(d).  The Board must:  (1) overcome the presumption by explaining why the applicable presumptive term is clearly inappropriate; and (2) explain why the imposed FET is necessary and appropriate.  The Board must also ensure that any extended FET is no longer than necessary to address what the Board perceives at the time to be "the inmate's lack of satisfactory progress in reducing the likelihood of future criminal behavior," which is the sole basis identified in the Parole Board's own regulations for establishing an extended FET.  Further, as noted in N.J.A.C. 10A:71-3.21(d), the Board shall consider the factors enumerated in N.J.A.C. 10A:71-3.11(b) in making its determination to impose an extended FET.  Of particular note is the factor related to the results of the objective risk assessment instrument.  Substantial weight should be given to the risk assessment as it is an objective measure of an inmate's likelihood of re-offending.  And, in reconsidering Cowan's parole on remand, the Parole Board must continue to be mindful that the 1979 Parole Act applies to Cowan.  Therefore, the Board can consider only new information since the time of Cowan's first parole denial in determining whether to grant him parole.  (pp. 36-37)

**REVERSED and REMANDED for a new parole hearing.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in JUSTICE PIERRE-LOUIS's opinion.**

3

SUPREME COURT OF NEW JERSEY
A-24 September Term 2024
089243

Horace Cowan,

Petitioner-Appellant,

v.

New Jersey State
Parole Board,

Respondent-Respondent.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| September 25, 2025 | March 10, 2026 |

Scott M. Welfel, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Scott M. Welfel, of counsel and on the brief).

Appellant filed a brief on appellant's behalf.

Christopher C. Josephson, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Janet Greenberg Cohen, Assistant Attorney General, of counsel, and Christopher C. Josephson, on the briefs).

Ezra D. Rosenberg argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation and

Rutgers Constitutional Rights Clinic Center for Law & Justice, attorneys; Ezra D. Rosenberg, Jeanne LoCicero, and Rebecca Uwakwe, of counsel and on the brief, and Ronald K. Chen and Jessica Rofé, admitted pursuant to Rule 1:21-3(c), on the brief).

Raymond M. Brown argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (Pashman Stein Walder Hayden, attorneys; Raymond M. Brown and Joshua P. Law, on the brief).

Jonathan Romberg submitted a brief on behalf of amicus curiae Seton Hall University School of Law Center for Social Justice (Seton Hall University School of Law Center for Social Justice, attorneys; Jonathan Romberg, of counsel and on the brief).

JUSTICE PIERRE-LOUIS delivered the opinion of the Court.

In this case, the New Jersey State Parole Board denied Horace Cowan parole. Cowan's presumptive future eligibility term (FET) -- the period of time an inmate must remain incarcerated before being considered for parole again -- was 27 months. The Parole Board instead imposed a 200-month FET. We are asked to determine whether the Board acted in an arbitrary, capricious, or unreasonable manner in setting that term.

In 1991, Cowan was sentenced to a term of life imprisonment with 25 years of parole ineligibility as a result of convictions for aggravated manslaughter, possession of a weapon for an unlawful purpose, and offenses related to his escape from jail while awaiting trial. In February 2020, Cowan

2

became parole eligible, but the Board denied parole. The Board then imposed a 200-month FET, meaning Cowan would remain incarcerated for another 200 months before being eligible for parole again. In its decision establishing the extended FET, the Parole Board stated that Cowan needed to develop a better understanding of his "criminal thinking" and a deeper understanding of why he chose to act in a criminal manner during the 1990 offense.

On appeal, Cowan challenged his denial of parole and argued that the 200-month FET was arbitrary and capricious. The Appellate Division affirmed, finding that the Parole Board's imposition of the 200-month FET was not arbitrary, capricious, or unreasonable and was supported by sufficient credible evidence in the record.

We find that the 200-month FET was arbitrary, capricious, and unreasonable, and we reverse and remand for a new parole hearing. Adopting an analysis similar to the Appellate Division's analysis in Berta v. State Parole Board, 473 N.J. Super. 284 (App. Div. 2022), we hold that in order for the Parole Board to impose an extended FET beyond the presumptive term, it must (1) overcome the presumption by explaining why the presumptive term is clearly inappropriate and (2) explain why the extended FET that the Board imposed is necessary and appropriate. Any extended FET imposed should be

3

no longer than needed to address the likelihood of recidivism, which is the primary concern of the applicable statute and regulations.

I.

A.

On February 18, 1990, when Cowan was 22 years old, he and two accomplices attempted to rob the victim. During the robbery, Cowan shot the victim with a sawed-off shotgun, resulting in his death. Cowan was charged with murder and two related firearms counts.

Cowan was detained at Monmouth County Correctional Institution while awaiting his trial. On February 20, 1991, Cowan -- assisted by two other inmates -- assaulted a corrections officer and maintenance worker in the course of escaping from the prison. He hit the corrections officer in the head with a metal pipe, threatened the maintenance worker with a screwdriver, confined both in the shower room, and escaped through a window using a fire extinguisher to break the steel rods. Cowan was apprehended the next day and returned to prison. He was charged with attempted murder, aggravated assault, armed robbery, kidnapping, criminal restraint, escape, and weapons offenses.

In May 1992, a jury found Cowan guilty of aggravated manslaughter and both firearms offenses related to the robbery victim's death. On July 31, 1992, he was sentenced to life imprisonment with 25 years of parole ineligibility.

For his escape from the Monmouth County prison, Cowan pled guilty to second-degree conspiracy to commit aggravated assault, third-degree criminal restraint, and second-degree escape. He was sentenced to an aggregate of 10 years' imprisonment with a five-year period of parole ineligibility for conspiracy to commit aggravated assault and the related offenses. The trial court ordered that this sentence run consecutively to the life sentence he received after his jury trial convictions.

Cowan has been in custody since February 20, 1990. During his incarceration, Cowan committed 21 institutional disciplinary infractions beginning in 1993, eight of which were asterisk-designated infractions, which "are considered the most serious and result in the most severe sanctions."[1] N.J.A.C. 10A:4-4.1(a). All but three of those 21 infractions occurred during Cowan's first 21 years in prison.

After 2011, Cowan incurred only three infractions. Two of those three infractions were related to a fight between Cowan and three other inmates in July 2018. According to Cowan, the fight occurred after he told the three younger inmates, who were affiliated with gangs, that they needed to be more

---

[1]  Cowan stated in his brief that he incurred 22 infractions. The Parole Board record lists 21 infractions because two 2018 infractions received a single, combined sanction.

5

positive, which he said led him to being bullied and looked down upon as a "nerd." Cowan claimed that after reporting the bullying to a corrections officer, the three men attacked him in his cell. The medical report regarding the incident stated that Cowan was found "laying supine in his housing unit" with "multiple facial lacerations, slurred speech . . . and swelling to the nose." The report also stated that officers on-site noted that Cowan "was involved in an altercation with multiple inmates in which he was possibly stomped." According to Cowan, he fought back during the attack and was later charged with fighting and disruptive conduct as a result.

Cowan's most recent infraction prior to becoming eligible for parole occurred in August 2018, when the Department of Corrections (DOC) proposed to transfer him to Bayside Prison, where the inmates who had assaulted him the month prior were housed. Cowan refused the housing assignment due to the conflict with the inmates and was charged with an infraction.

At the time of his parole hearing in 2020, Cowan had not incurred any additional infractions since August 2018. Cowan lost a total of 725 days of commutation credits due to infractions during his time in prison.

Since 2001, Cowan has maintained employment in the prison kitchen, bakery, dining room, and building sanitation unit. He obtained his high school

6

diploma while in prison and completed multiple therapeutic and substance abuse programs, including Focus on the Victim, Cognitive Behavioral Change, Anger Management, Living in Balance, 12 Step Education, Successful Transition and Reentry Program, HOPE Parenting Program, and Employment Readiness. Cowan also completed several vocational programs, including Department of Transportation Hazmat and CPR.

B.

Cowan became eligible to be released on parole in February 2020. The Parole Board held Cowan's parole hearing in November 2019. On January 2, 2020, a two-member Board panel denied Cowan parole, determining that "a substantial likelihood exists that [he] would commit a new crime if released on parole at this time." In denying parole, the Board used a form checklist to denote its decision, reasons for its denial, and the mitigating factors it found.

Regarding its reasons for denial, the two-member Parole Board panel marked an "x" adjacent to the following factors: "Facts and circumstances of offense(s), Specifically: multiple acts of violence, one involving fatality"; "Prior offense record is extensive"; "Offense record is repetitive"; "Prior offense record noted"; "Nature of criminal record increasingly more serious"; "Committed to incarceration for multiple offenses"; "Committed new offense(s) on community supervision (probation)"; "Prior opportunity(ies) on

7

community supervision . . . has (have) failed to deter criminal behavior"; "Prior incarceration(s) did not deter criminal behavior"; "Institutional infraction(s)," noting the last infraction was on August 22, 2018 for refusing a work assignment;[2] "Commission of current offense(s) while incarcerated / ROR / on bail / on escape / attempting to elude prosecution"; and Cowan's score of 24 on the risk assessment evaluation known as the LSI-R (Level of Service Inventory-Revised). Dr. Richard Mucowski, Ph.D., performed the objective LSI-R risk assessment and concluded that Cowan scored a 24, which indicated "a moderate risk for recidivism with a 28% chance of re-arrest and a 17.1% chance of reconviction within two years of release."

The panel also marked an "x" next to "Insufficient problem(s) resolution," for which the panel explained that Cowan "has over 21 infractions with the most recent ones committed in 2018 including refusing to work and fighting. The infractions indicate that [Cowan] still has not addressed his criminal behavior or thinking. [Cowan] needs to participate in his own rehabilitation by addressing his behavior during incarceration." At the bottom

---

[2] We note that the record, including notes and documentation from prison staff, clarifies that Cowan's August 2018 infraction was for refusing a housing assignment, not for refusing a work assignment as stated by the Board in its parole denial. That infraction, referred to in the record as violation .254, encompasses violations for "refusing to work, or to accept a program or housing unit assignment." (emphases added).

of the form, on the line adjacent to "[t]he Panel suggests," the panel wrote "[r]emain infraction free."

The two-member panel checked the following boxes to indicate it found these mitigating factors: "All opportunity(ies) on community supervision completed without violation(s)"; "Participation in program(s) specific to behavior"; "Participation in institutional program(s)"; "institutional reports reflect favorable institutional adjustment"; "Attempt made to enroll and participate in program(s) but was not admitted"; and "Positive interview is noted."

After the denial, Cowan provided a letter of mitigation to the Parole Board, accompanied by supporting documents and letters of support.

On March 3, 2020, the two-member panel amended its decision. The panel removed "[p]ositive interview is noted" as a mitigating factor, and, under reasons for denial, added "lack of insight into criminal behavior" under the "[i]nsufficient problem(s) resolution" category. Regarding the removal of "[p]ositive interview is noted," the panel explained that the mitigating factor "appeared on the Initial Hearing Case Assessment, however, it does not appear appropriate for the Board panel's interview." The panel also clarified, as reasons for its denial, that Cowan's "[c]ommission of [the] current offense [was] while [he was] incarcerated" and Cowan had a "lack of insight into

9

criminal behavior," which contributed to his "[i]nsufficient problem resolution." The Board again suggested that Cowan "[r]emain infraction free."

The two-member panel referred the matter to a three-member Parole Board panel for establishment of an FET. As articulated by the Parole Board, "[t]he FET establishes the length of time that must be served before the inmate may again become eligible for parole consideration, and the initiation of the parole hearing process once again." N.J. State Parole Bd., Division of Release, https://www.nj.gov/parole/functions/release-division/ (last updated Jan. 25, 2022). Pursuant to the Board's regulations, if the Board seeks to establish an FET longer than the presumptive term outlined in the regulations based on the offense of conviction, 27 months in this case, the FET must be set by a three-member Board panel.[3] See N.J.A.C. 10A:71-3.21(a), (d).

On May 6, 2020, the three-member panel imposed a 200-month FET -- nearly 17 years and more than seven times the presumptive FET of 27 months noted in N.J.A.C. 10A:71-3.21(a)(1).

On June 5, 2020, the panel issued a 10-page decision regarding the 200-month FET. The decision detailed Cowan's offenses, his institutional record,

---

[3] The three-member panel consisted of the original two Parole Board members that denied Cowan parole, with the addition of a third Board member.

10

his "insufficient problem resolution," and the panel's reasons for imposing the 200-month FET.

The panel explained its reasons for finding that Cowan lacked insight into his criminal behavior. It noted Cowan's statement, regarding his manslaughter conviction, that he was "sorry for all of that, that day," as well as his explanation that, at the time, he was "really thinking as a juvenile, doing dumb stuff," was "on the street," and "basically just wanted to fit in. Be cool." The panel noted Cowan stated that he "found [himself] doing a lot of dumb stuff that shouldn't [have] been done." The panel found that Cowan needed to "develop a better understanding [of] the dynamics of [his] personality defects that impelled [him] to criminal behavior." The panel also stated that, for Cowan, "[g]aining insight into [his] personality defects is essential, so [he] can comprehend [his] triggers and stressors to [his] life experiences and how those factors influence [his] criminal thinking."

The panel took issue with Cowan's infraction that resulted from the 2018 incident with other inmates, which was his most recent infraction at the time. According to the panel, Cowan explained at the parole hearing that the fight resulted from his attempt to counsel younger inmates "who may be acting in a negative manner." The panel stated that Cowan admittedly conducted himself "in such a manner, choosing to interact and lecture inmates on how they were

11

living a negative life based upon their street gang affiliations." The panel further stated that Cowan's decision to talk to those inmates "resulted in animosity and an incident during which [he] claim[ed] [he] had to defend [himself] from three (3) inmates who attacked [him]." The panel found that Cowan needed to "develop better judgment in dealing and interacting with others, during situations of discourse and confrontation."

In detailing the reasons for its imposition of the 200-month FET, the panel stated:

> You present as having identified contributory factors of your criminal thinking. Seeking acceptance from your peers as a juvenile was a contributory factor. The Board panel finds you must develop a deeper understanding into why you made the choice and found it easily acceptable to act in a criminal manner, at times with the use [of] violence, to achieve social acceptance. You must conduct an introspection to understand the emotional and psychological dynamics of your criminal thinking; and
>
> You present as not having made adequate progress in the rehabilitative process. The Board panel notes your participation in programming/counseling including Thinking For a Change, Focus On The Victim, Anger Management and Successful Transition and Reentry Series (STARS). However, the Board panel finds that further programming will assist you in gaining a better understanding [of] your criminal thinking; and
>
> You committed twenty-one (21) infractions, with eight (8) of the infractions being serious (asterisk). The serious infractions involved you exhibiting assaultive

12

and disruptive behavior, along with incidents with components of fighting and narcotics . . . . Though you claimed at the hearing that you are older and are no longer the young man who made poor choices in the past, the Board panel finds that your recent *.004 -- <u>Fighting Any Person</u> infraction from 2018 demonstrates that problematic issues still exist regarding how you interact with others.

The panel estimated that, after application of commutation credits, Cowan's projected parole eligibility date would be in June 2030, or 10 years and four months after his initial eligibility date. The panel's decision did not relate the 200-month FET to Cowan's risk of recidivism as calculated by the LSI-R.

Cowan administratively appealed the 200-month FET decision to the full Board. The Board affirmed the denial of parole and imposition of the extended FET, again citing "insufficient problem resolution," and a "lack[] [of] insight into his criminal behavior."

Cowan, appearing as a self-represented litigant, appealed to the Appellate Division, challenging both the parole denial and 200-month FET. The Appellate Division affirmed, finding the decision was supported by "sufficient credible evidence on the record" that reflected Cowan's lack of insight, history of infractions -- particularly the eight serious/asterisked infractions -- and need for rehabilitation.

13

We granted Cowan's petition for certification, which he filed on his own behalf as a self-represented litigant.[4]  259 N.J. 485 (2025).  We also granted leave to appear as friends of the court to the American Civil Liberties Union of New Jersey (ACLU), Association of Criminal Defense Lawyers of New Jersey (ACDL), and the Seton Hall University School of Law Center for Social Justice.

## II.

### A.

Cowan urges this Court to reverse the Parole Board's 200-month FET and remand for a new parole hearing.  He argues that the Board's decision to impose such a lengthy FET was arbitrary and capricious because the Board failed to show that the presumptive FET was insufficient to reduce Cowan's likelihood of recidivism.  Cowan asks this Court to articulate a clear standard for the Board to apply in setting FETs and to adopt the standard articulated by the Appellate Division in Berta, 473 N.J. Super. at 323.  Applying the Berta standard, Cowan argues that the 200-month FET the Board imposed after his denial of parole fails to overcome the presumption of an FET within the schedule and must be reversed.

---

[4]  The Office of the Public Defender now represents Cowan before this Court.

14

The ACLU argues that the record in this case does not establish a substantial likelihood that Cowan will re-offend and does not justify a 200-month FET. The ACLU notes that the Board must consider all factors in N.J.A.C. 10A:71-3.11(b) in setting an FET, including the objective risk assessment -- the LSI-R -- which the ACLU argues the Board failed to consider in establishing Cowan's FET. The ACDL argues that when the Board sets FETs, its discretion should be constrained by New Jersey's "fundamental fairness" doctrine, which forbids arbitrary or unjust government actions and requires both procedural and substantive protections. The Seton Hall University School of Law Center for Social Justice stresses that the Board's imposition of a 200-month FET -- far exceeding the presumptive FET of 27 months and the nine-month permitted upward adjustment -- is disproportionate and violates the Legislature's intent to establish clear and determinate parole eligibility timelines.

B.

The Parole Board argues that Cowan's 200-month FET is not arbitrary, capricious, or unreasonable. At oral argument, the Board conceded there is a presumption that the scheduled FET listed in the regulations will be imposed. The Board contends the extended FET was properly imposed here because the Board appropriately considered all pertinent factors under N.J.A.C. 10A:71-

3.11(b), properly focused on Cowan's potential for recidivism, and supplied ample explanation for why it imposed a 200-month FET based on Cowan's criminal and infraction history. The Board urges the Court to reject Cowan's interpretation of the Appellate Division's holding in <u>Berta</u>. The Board asserts that the Appellate Division did not hold in <u>Berta</u> that the length of an FET must mirror the time necessary to reduce the inmate's risk of recidivism, as Cowan claims.

## III.

### A.

Appellate "review of administrative agency action is limited." <u>Russo v. Bd. of Trs., PFRS</u>, 206 N.J. 14, 27 (2011). Reviewing "[c]ourts apply a deferential standard to final agency actions and will not overturn them unless an action is arbitrary, capricious, or unreasonable." <u>In re Att'y Gen. Law Enf't Directive Nos. 2020-5 & 2020-6</u>, 246 N.J. 462, 489 (2021). Appellate courts focus on the following three inquiries when addressing the validity of an agency decision:

> (1) whether the agency's action violates express or implied legislative policies, i.e., did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

16

> [Trantino v. State Parole Bd. (Trantino IV), 154 N.J. 19, 24 (1998).]

We interpret statutes, however, de novo. Krug v. State Parole Bd., 261 N.J. 477, 485-86 (2025).

This Court has "recognized that Parole Board decisions are highly 'individualized discretionary appraisals.'" Trantino v. State Parole Bd. (Trantino VI), 166 N.J. 113, 173 (2001) (quoting Beckworth v. State Parole Bd., 62, N.J. 348, 359 (1973)). In reviewing Parole Board decisions, appellate courts must determine whether the Parole Board's factual finding "that 'there is a substantial likelihood that an inmate will commit another crime if released'" could have reasonably "'been reached on sufficient credible evidence in the whole record.'" Id. at 172 (quoting Trantino IV, 154 N.J. at 24).

"Although courts are cautioned not to substitute their judgments for that of the Parole Board, when a parole decision is so far wide of the mark or so manifestly mistaken under the governing statutory standard, intervention is required in the interests of justice." Acoli v. State Parole Bd., 250 N.J. 431, 455 (2022) (citing Trantino VI, 166 N.J. at 192). Therefore, a parole decision cannot be sustained if it "either violates legislative policy, is not supported by 'substantial evidence' in the record, or 'could not reasonably have been made

17

on a showing of the relevant factors.'" Ibid. (citing Trantino IV, 154 N.J. at 24-25).

## B.

In the Parole Act of 1948, the Legislature created the State Parole Board "to determine when, and under what conditions, . . . [inmates] may be released upon parole." L. 1948, c. 84, §§ 1, 5. Under the 1948 Act, eligibility for parole release was not directly tied to a defendant's sentence; rather, "[a] complex of factors and computations required by statute, administrative regulations and institutional rules and practices governed the amount of time an inmate was required to serve in prison before he was entitled to parole consideration." In re Parole Application of Trantino (Trantino II), 89 N.J. 347, 367 (1982). The 1948 statute, like the scheme in place before its enactment, treated the sufficiency of an inmate's punishment as "a highly relevant consideration in parole determinations." Id. at 368. For a prisoner to be released on parole, the Board had to be "of the opinion that there is reasonable probability that, if such prisoner is released, he will assume his proper and rightful place in society, without violation of the law, and that his release is not incompatible with the welfare of society." L. 1948, c. 84 § 14. The Parole Board was therefore required to consider "the likelihood of recidivism" as well as the "sufficiency of punishment." Trantino II, 89 N.J. at 368.

In 1979, our State's "penal laws underwent a significant change." Krug, 261 N.J. at 487 (quoting Royster v. Fauver, 775 F.2d 527, 529 (3d Cir. 1985)). The 1979 amendments to the Criminal Code implemented a new sentencing structure that more clearly defined the discretionary aspects of imposing sentences: "Specific mitigating and aggravating factors which the sentencing judge must consider [were] enumerated in the [Criminal] Code." Trantino II, 89 N.J. at 368. After the 1979 amendments, parole eligibility became "a function of the sentence received." Ibid. "In effect," the decision regarding parole eligibility became "a judicial responsibility to be exercised at the time of sentencing," and defendants convicted of a crime can now be "required to serve a mandatory minimum term before they can be considered for parole." Ibid.

At the same time, the Legislature amended the State's parole laws and implemented "significant changes to complement the Code's sentencing scheme." Ibid. "The 1979 [Parole] Act replaced the 1948 Act's dual considerations of (1) 'the likelihood of recidivism' and (2) the 'sufficiency of punishment' with only one criterion: whether the inmate would likely commit another crime if released." Krug, 261 N.J. at 487 (quoting Trantino II, 89 N.J. at 367-68). It thus precluded the "Parole Board from considering whether the prisoner had been sufficiently punished so as to serve society's need for

19

deterrence and retribution." Trantino v. State Parole Bd. (Trantino V), 331

N.J. Super. 577, 604 (App. Div. 2000), overruled in other part by Krug, 261

N.J. at 497. Consequently, the 1979 Parole Act created a presumption in favor

of release, "shift[ing] the burden to the State to prove that the prisoner . . .

should not be released." State Parole Bd. v. Byrne, 93 N.J. 192, 205 (1983).

Indeed, the 1979 amendments stated that "[a]n adult inmate shall be

released on parole at the time of parole eligibility, unless information supplied

in the report filed [with the Parole Board] or developed or produced at a

hearing . . . indicates by a preponderance of the evidence that there is a

substantial likelihood that the inmate will commit a crime under the laws of

this State if released on parole at such time."[5] L. 1979, c. 441, § 9(a)

---

[5] In 1997, the Legislature amended the Parole Act and once again altered the Board's inquiry regarding parole determinations, broadening the bases upon which the Board could deny parole. L. 1997, c. 213. The Parole Act currently directs that an inmate

> shall be released on parole at the time of primary parole eligibility, unless information supplied in the report filed [with the Parole Board] or developed or produced at a hearing . . . indicates by a preponderance of the evidence that the inmate has failed to cooperate in his or her own rehabilitation or that there is a reasonable expectation that the inmate will violate conditions of parole imposed . . . if released on parole at that time.

> [N.J.S.A. 30:4-123.53(a).]

(emphasis added). As indicated by the word "shall," parole was therefore mandatory <u>unless</u> the Board found an inmate was likely to re-offend, based on information supplied to it or discovered during the parole proceedings. Therefore, under the 1979 Parole Act, the only inquiry before the Board was the determination of whether it was likely that the inmate would commit a crime if released.

C.

An inmate's parole eligibility is governed by the version of the Parole Act in effect when their crime was committed. <u>Berta</u>, 473 N.J. Super. at 304; <u>see also</u> <u>Trantino II</u>, 89 N.J. at 373 (noting that the Parole Board erred in considering itself bound by the recently enacted 1979 Parole Act when the relevant offenses were committed prior to the Act's effective date). Here, the 1979 version of the Parole Act governs because Cowan committed the offenses for which he was convicted in 1990 and 1991, before the 1997 amendments to the Parole Act.[6] We therefore focus our discussion on the requirements and procedures under the 1979 version of the Act.

That version of the Act provides that every defendant sentenced to a term of imprisonment in New Jersey becomes eligible for parole after serving

---

[6] We note that the Appellate Division quoted the 1997 version of the Parole Act when discussing the standards for granting parole.

21

the minimum term specified by law.  L. 1979, c. 441, § 7.  Pursuant to the Parole Board's regulations, in considering an inmate's parole application, "[t]he hearing officer, Board panel, or Board shall consider" a list of 24 enumerated factors.  N.J.A.C. 10A:71-3.11(b) (emphasis added).[7]  Those factors include, among other considerations, the inmate's commission of an offense during incarceration, any serious disciplinary infractions, the facts and circumstances of the offense of conviction, "[s]tatements by the inmate reflecting on the likelihood that he or she will commit another crime," and the results of the objective risk assessment instrument.  N.J.A.C. 10A:71-3.11(b)(1), (2), (5), (17), (23).  The regulations further direct that the Board "may consider any other factors deemed relevant," in addition to the factors that must be considered.  N.J.A.C. 10A:71-3.11(b).

If the Board grants parole, the Board issues a certificate of parole with specific conditions the parolee must abide by.  L. 1979, c. 441, § 15(b).  If the

---

[7]  Both parties rely on the current version of Parole Board regulations and neither has argued that the version of the regulations at the time Cowan committed his offenses applies, or that an Ex Post Facto Clause violation results from applying the current regulations.  See Garner v. Jones, 529 U.S. 244, 255 (2000) (holding that to prove a retroactive application of a parole board rule violated the Ex Post Facto Clause, the defendant "must show that as applied to his own sentence the law created a significant risk of increasing his punishment").  Therefore, the issue of whether a prior version of the regulations should apply is not before this Court.

Board denies parole, the Board must set an FET, or the date on which the inmate can next be considered for parole. L. 1979, c. 441, § 12(b).

The schedule of FET dates is determined according to regulations promulgated by the Board, with emphasis on the inmate's prior criminal record and the need for continued incapacitation of the inmate. L. 1979, c. 441, § 12(a); N.J.A.C. 10A:71-3.21. Pursuant to N.J.A.C. 10A:71-3.21(a), a two-member Parole Board panel shall establish an FET based on the schedule. N.J.A.C. 10A:71-3.21(a)(1) sets the standard FET at 27 months for inmates serving sentences for murder, manslaughter, aggravated sexual assault, kidnapping, and other serious offenses. The standard FET for other offenses is shorter. See N.J.A.C. 10A:71-3.21(a)(2) to (a)(4) (setting the FET for armed robbery and robbery, among other offenses, at 23 months; the FET for burglary, narcotics offenses, theft, and arson, among other offenses, at 20 months; and the FET for bribery, conspiracy, gambling, and possession of a weapon, among other offenses, at 17 months).

The Board, however, may, in its discretion, increase or reduce an FET by nine months. N.J.A.C. 10A:71-3.21(c) states that

> [t]he future parole eligibility dates required pursuant to (a) and (b) above may be increased or decreased by up to nine months when, in the opinion of the Board panel, the severity of the crime for which the inmate was denied parole and the prior criminal record or other characteristics of the inmate warrant such adjustment.

23

Pursuant to that regulatory provision, the Parole Board in its discretion can lower the FET to 18 months for someone who, like Cowan, is incarcerated for manslaughter -- which carries an FET of 27 months under the schedule -- or increase it to a maximum of 36 months.

The Parole Board can also depart from the FET schedule and establish an FET that exceeds the nine-month increase pursuant to N.J.A.C. 10A:71-3.21(d):

> A three-member Board panel may establish a future parole eligibility date which differs from that required by the provisions of (a) or (b) and (c) above if the future parole eligibility date which would be established pursuant to such subsections is clearly inappropriate due to the inmate's lack of satisfactory progress in reducing the likelihood of future criminal behavior. In making the determination that the establishment of a future parole eligibility date pursuant to (a) or (b) and (c) above is clearly inappropriate, the three-member panel shall consider the factors enumerated in N.J.A.C. 10A:71-3.11.

In other words, if the Board panel is considering an FET beyond that required by the regulations, section 3.21(d) directs the three-member panel to consider the same factors the Board is required to consult in making the initial decision of whether to grant or deny parole pursuant to N.J.A.C. 10A:71-3.11(b).

24

D.

This Court has yet to decide a case specifically regarding the propriety of the Parole Board's decision to impose an extended FET, but opinions from this Court and the Appellate Division reviewing denials of parole, which often address the imposition of FETs, are instructive.

In Trantino IV, this Court, in part, analyzed the Parole Board's denial of parole and setting of an FET of 10 years under the standard established in the 1979 Parole Act. 154 N.J. at 22. The Court set aside the denial of parole and the 10-year FET and modified and affirmed the Appellate Division's judgment to remand the case to the Board. Id. at 39, 44. We concluded that, in the Board's decision-making process, it had applied the wrong standard, which resulted in denying Trantino parole. Id. at 43-44. This Court found that

> the Parole Board's decision that Trantino is not at present ready for parole and that he will not be eligible for parole for another ten years was influenced by the application of a standard of parole that may not have focused sufficiently on the likelihood that Trantino will commit crimes if released, but instead focused on the achievement of complete rehabilitation. Hence, the Parole Board's final determination cannot be said to be supported by adequate findings of fact derived from sufficient credible evidence. The current state of the record and the several decisions of the Parole Board do not support and explain a determination that Trantino, if paroled, will likely again resort to crime. Accordingly, we set aside the Parole Board's decision denying parole and postponing reconsideration of parole eligibility for ten years.

25

[Id. at 38-39.]

In addition, in discussing the 1979 Parole Act, this Court noted that "[t]he Parole Board's ultimate determination of parole fitness must be based on whether there is a likelihood that Trantino will again engage in criminal activity." Id. at 39. The Court explained that the likelihood of Trantino re-offending serves as the primary standard that permeates the 1979 Parole Act amendments, including the setting of an extended FET. Id. at 27, 38.

In Acoli, a case not focused on FETs, this Court found that the Parole Board lacked substantial evidence to deny Acoli parole and failed to show by a preponderance of the evidence that he would commit a crime if released. 250 N.J. at 470. This Court determined that the Parole Board had "taken refuge in threadbare findings that Acoli lacks insight into the conduct that led him to his involvement in the crimes he committed in 1973 and that he still refuses to take responsibility for his acts." Id. at 460. Further, we found that nothing in the Board's decision suggested that it had meaningfully considered Acoli's "exemplary institutional record," the compelling "studies on the age-crime curve," or Acoli's "psychological risk assessments." Id. at 465-71.

Most recently, in Berta, the Appellate Division reversed Berta's 72-month FET. 473 N.J. Super. at 325. In 1984, Berta was sentenced to life imprisonment with thirty years of parole ineligibility for murder. Id. at 289.

26

After the Board denied his first application for parole in 2015, the Board established a 120-month FET, which the Appellate Division affirmed. Id. at 292. Berta's second parole hearing occurred in 2020. A two-member Board panel again denied parole, stating there was a "substantial likelihood . . . that [Berta] would commit a new crime if released on parole." Id. at 297. The Board cited three primary reasons for its decision: (1) the facts and circumstances of Berta's multiple offenses; (2) his denial of committing the offenses; and (3) his seven institutional disciplinary infractions, which were "numerous, persistent, [and] serious." Id. at 298-99. The matter was then referred to a three-member Board panel, which affirmed the parole denial primarily because of Berta's "continued refusal to admit his guilt." Id. at 299. The three-member panel established a 72-month FET. Ibid.

Berta filed an administrative appeal to the full Board, which affirmed the panel's decision. Ibid. On appeal, the Appellate Division reversed and remanded to the Board, finding that "the Board failed to adequately explain why it fixed an FET almost three times as long as the presumptive twenty-seven-month FET." Id. at 322.

The Appellate Division held that in imposing an FET higher than the presumptive term outlined in the N.J.A.C. 10A:71-3.21(a) schedule and above the extended term of nine months outlined in N.J.A.C. 10A:71-3.21(c), the

27

Parole Board must: (1) "overcome the presumption by explaining why a twenty-seven-month FET is clearly inappropriate" and (2) must also explain "why the FET that was actually imposed is necessary and appropriate." Id. at 323. The appellate court stressed that "[t]he Board cannot simply pick a number out of thin air." Ibid. The court noted that the "clearly inappropriate" standard from the regulations is a "high threshold to vault" and that the presumptive FET "is not to be dispensed with for light or transient reasons." Id. at 322-23.

The Appellate Division further emphasized that in establishing an extended FET pursuant to N.J.A.C. 10A:71-3.21(d), "(1) an FET must not be imposed as a form of punishment; and (2) the decision to impose an FET beyond the presumptive FET, like the underlying decision to deny parole, must be tied directly to the goal of reducing the likelihood of future criminal behavior." Id. at 323. The appellate court presumed that the Parole Board's decision to deny Berta parole did not adhere to those standards and was "strongly influenced, if not driven, by [his] refusal to admit his guilt." Id. at 324. The Appellate Division concluded that it would be "inappropriate to impose a lengthy FET to essentially coerce Berta to admit his guilt." Id. at 325.

28

In his concurring opinion, Judge Geiger suggested that the Court should address several unresolved issues regarding the Parole Board's authority over imposing extended FETs. Id. at 326-27 (Geiger, J.A.D., concurring). The concurrence questioned "the Board's largely unbridled discretion" in imposing extended FETs and whether inmates are entitled to greater procedural protections during this process, and it argued for a less deferential standard of review. Id. at 327. Judge Geiger emphasized that the evidence in the record must objectively demonstrate that the duration of an FET is "directly relate[d] to the amount of time necessary to address the reasons identified for denying parole." Id. at 328.

IV.

Applying these principles, we find that the Parole Board's imposition of the 200-month FET in this case was arbitrary, capricious, and unreasonable.

When Cowan became eligible for parole in 2020, for the first time since being taken into custody in February 1990, the Parole Board denied parole. The three-member Board panel then established an FET of 200 months pursuant to N.J.A.C. 10A:71-3.21(d), citing Cowan's need for an "introspection" and further programming and his 21 infractions.

Missing from the panel's decision, however, was an explanation of why it believed the presumptive FET of 27 months (up to a maximum of 36

29

months) was insufficient due to Cowan's "lack of satisfactory progress in reducing the likelihood of future criminal behavior," the one basis articulated in the Board's regulations for imposing an extended FET. See N.J.A.C. 10A:71-3.21(d). The Board panel neglected to forge any connection between the facts in the parole record and the risk that Cowan would re-offend if released on parole. The Board also did not explain why the length of the FET, 200 months, was necessary to address the likelihood of Cowan engaging in future criminal behavior -- the very issue at the center of the 1979 Parole Act amendments.

As detailed above, the statutory scheme as amended under the 1979 Parole Act focused on the likelihood of recidivism, in line with the revisions to the Criminal Code. Importantly, those amendments changed the way defendants were sentenced and established a new structure involving aggravating and mitigating factors for trial courts to consider in imposing a sentence. This new sentencing scheme allowed trial courts to impose a period of parole ineligibility, thereby requiring certain defendants to serve a minimum amount of time in prison before becoming eligible for parole. This shift in sentencing, through which parole eligibility became "a function of the sentence received," led to a shift in the consideration of parole. The Parole Board was no longer charged with considering whether the prisoner had been

sufficiently punished -- that determination was made by the sentencing court on the front end. Instead, the Legislature adjusted the parole determination decision to focus, under the 1979 Act, on whether there is a substantial likelihood an inmate will commit another offense if released. See Trantino II, 89 N.J. at 368-69.

The determination of whether an inmate will commit a crime if released on parole is the critical decision under the 1979 Parole Act amendments, and it is evident by the plain language of the statute at the time that the Legislature intended the risk of recidivism to be the only impediment to parole. First, the statute directed that an inmate "shall be released on parole at the time of parole eligibility, unless information supplied . . . indicates by a preponderance of the evidence that there is a substantial likelihood that the inmate will commit a crime under the laws of this State if released on parole at such time." L. 1979, c. 441, § 9(a) (emphasis added). Even on reconsideration of parole, subsequent to the inmate serving their time pursuant to the FET, the statute once again required that an inmate "shall be released on parole on the new parole eligibility date unless new information . . . indicates by a preponderance of the evidence that that there is a substantial likelihood that the inmate will commit a crime under the laws of this State if released on parole at such time." L. 1979, c. 441, § 12(c) (emphasis added).

31

The Parole Board's regulations for setting FETs beyond the presumptive term also focus on the risk of recidivism. Pursuant to N.J.A.C. 10A:71-3.21(d), a three-member Parole Board panel can set an FET above the presumptive term and the allowable nine-month increase if the presumptive FET in the schedule "is clearly inappropriate <u>due to the inmate's lack of satisfactory progress in reducing the likelihood of future criminal behavior</u>." (emphasis added). The regulations further direct that a Board panel, in making the determination that the presumptive FET is inappropriate, "<u>shall</u> consider the factors enumerated in N.J.A.C. 10A:71-3.11," which are the same factors considered in determining whether parole should be granted or denied. <u>Ibid.</u> (emphasis added).

In setting the 200-month FET for Cowan, the Board panel's decision is devoid of any connection between the facts in the parole record and the determination that a 200-month FET, instead of a 27- or 36-month FET, was necessary to reduce Cowan's likelihood of future criminal behavior. It seemed, quite frankly, that the Board panel "simply pick[ed] a number out of thin air," <u>see</u> <u>Berta</u>, 473 N.J. Super at 323, which is the very definition of an arbitrary and capricious determination.

The three-member panel's decision fails to address any of the facts that directly relate to the core inquiry of whether Cowan was likely to re-offend if

32

released. The panel noted Cowan's commission of 21 infractions while in prison, but did not address the fact that all but three of those infractions occurred within the first 21 years of his incarceration. That decrease in infractions in the later years of his incarceration is arguably indicative of Cowan's progress over time in reducing his likelihood of future criminal behavior. The panel further noted that Cowan needed to gain more insight into his criminal behavior by engaging in more programming, without any indication of what type of programming the Board panel deemed necessary or beneficial -- in other words, the sort of "threadbare findings" we rejected in Acoli, 250 N.J. at 460. The 1979 Parole Act and the Parole Board's regulations demand more from the panel's decision to set aside the 27- or 36-month FET in favor of an FET that was more than seven times the presumptive term.

Also absent from the three-member Board panel's decision is any mention of some of the important factors the panel is to consider in imposing an extended FET. As explained above, N.J.A.C. 10A:71-3.21(d) directs the panel to consider the factors in -3.11(b) in establishing an FET above the presumptive term. The panel's decision, however, seemed to overlook the "results of the objective risk assessment instrument." See N.J.A.C. 10A:71-3.11(b)(23). That objective assessment, the LSI-R, specifically gauges an

33

inmate's risk of future criminal conduct, the question at the core of the determination of whether to establish an extended FET. In the Parole Board's denial of parole, the two-member panel checked the "Risk assessment evaluation" box on the Board's checklist form indicating, without elaboration, that the LSI-R was one of the reasons for denial. The three-member panel's written decision setting the 200-month FET, however, made no mention of the LSI-R, which concluded that Cowan was "a moderate risk for recidivism with a 28% chance of re-arrest and a 17.1% chance of reconviction within two years of release." Additionally, the three-member panel's decision seemed to not consider statements by Cowan himself and/or by institutional staff as to whether "[Cowan] is likely to commit a crime if released," two other factors related to risk of recidivism. See N.J.A.C. 10A:71-3.11(b)(9), (17).

The presumptive FETs set forth in the regulations are the product of the Parole Board's careful rulemaking process, in which specific offenses were taken into consideration in determining how long an individual convicted of certain crimes should wait to be considered for parole after an initial denial. For example, inmates like Cowan "serving a sentence for murder, manslaughter, aggravated sexual assault, kidnapping, or strict liability for drug induced death, or serving any minimum-maximum or specific sentence in excess of 14 years for a crime [not otherwise listed]" shall serve an FET of 27

34

months.  N.J.A.C. 10A:71-3.21(a)(1).  An FET of 27 months is the longest presumptive FET term listed in the regulations and is reflective of the serious nature of the crimes to which that FET is applicable.  The Parole Board, therefore, already took the seriousness of Cowan's crimes into account when setting the FET schedule.  Even the Attorney General conceded at oral argument that there is a presumption that the FETs outlined in N.J.A.C. 10A:71-3.21(a) will be imposed.  In order for the Parole Board to increase the FET above 27 or 36 months, it must adhere closely to the requirements of its own regulations that require a determination regarding the likelihood that an inmate will commit a crime if released.

Given the Board's lack of focus on Cowan's risk of re-offense, the absence of substantive reasoning in its decision for imposing an FET term of nearly 17 years when the presumptive term was between two and three years, and its apparent lack of meaningful consideration of the one objective assessment tool designed to determine an inmate's risk of recidivism, the Board's imposition of a 200-month FET in this case was arbitrary, capricious, and unreasonable.  We therefore reverse the judgment of the Appellate Division.

Many years have passed since Cowan's parole hearing in 2019 and the Board's denial of parole and imposition of the 200-month FET in 2020.  Given

35

the passage of time, we remand this matter to the Parole Board for a new parole hearing.

Going forward, the standard articulated by the Appellate Division in Berta is the standard the Parole Board must adhere to when setting FETs above the presumptive term. We hold that the Parole Board, in setting an FET pursuant to N.J.A.C. 10A:71-3.21(d) beyond the presumptive term and the allowable nine-month increase, must: (1) overcome the presumption by explaining why the applicable presumptive term is clearly inappropriate; and (2) explain why the imposed FET is necessary and appropriate. As the Appellate Division in Berta noted, the "clearly inappropriate" standard articulated in the regulations is a "high threshold to vault," and the presumptive terms detailed in the Board's regulations are "not to be dispensed with for light or transient reasons." See Berta, 473 N.J. Super. at 322-23.

The Board must also ensure that any extended FET imposed pursuant to N.J.A.C. 10A:71-3.21(d) is no longer than necessary to address what the Board perceives at the time to be "the inmate's lack of satisfactory progress in reducing the likelihood of future criminal behavior," as that is the sole basis identified in the Parole Board's own regulations for establishing an extended FET. See N.J.A.C. 10A:71-3.21(d). Indeed, "an extended FET must be based

on substantial credible evidence in the record that objectively demonstrates that its duration directly relates to the amount of time necessary to address the reasons identified for denying parole." Berta, 473 N.J. Super. at 328 (Geiger, J.A.D., concurring). Given that the only reason for denying parole pursuant to the 1979 Parole Act is the risk of recidivism, the Board must relate the FET duration to that reason.

Further, as noted in N.J.A.C. 10A:71-3.21(d), the Board shall consider the factors enumerated in N.J.A.C. 10A:71-3.11(b) in making its determination to impose an extended FET. Of particular note is the factor related to the results of the objective risk assessment instrument. See N.J.A.C. 10A:71-3.11(b)(23). Substantial weight should be given to the risk assessment as it is an objective measure of an inmate's likelihood of re-offending.

Lastly, in reconsidering Cowan's parole on remand, the Parole Board must continue to be mindful that the 1979 Parole Act applies to Cowan. Therefore, the Board can consider only new information since the time of Cowan's first parole denial in determining whether to grant him parole. See L. 1979, c. 441, § 12(c) ("An inmate shall be released on parole on the new parole eligibility date unless new information . . . indicates by a preponderance of the evidence that there is a substantial likelihood that the inmate will

37

commit a crime under the laws of this State if released on parole at such time."

(emphases added)).[8]

## VI.

For the foregoing reasons, we reverse the judgment of the Appellate

Division and remand the matter to the Parole Board for a new hearing.


CHIEF JUSTICE RABNER and JUSTICES PATTERSON, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in JUSTICE PIERRE-LOUIS's opinion.

---

[8] The Legislature's 1997 amendments to the Parole Act removed the new information limitation, and the Act now allows the Parole Board, "during second or subsequent hearings, to . . . consider all relevant information about an inmate." Krug, 261 N.J. at 480.